IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–03010–MSK–KMT

CORRI DITTIMUS a-k-a DERRICK ANDERSON,

 Plaintiff,

v.

MS. BOND, Program Director, Individual and Official Capacities, and
MR. LA LONDE, Case Management Supervisor, Individual and Official Capacities,

 Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

 This case comes before the court on Defendant Bond's "Motion to Dismiss."[1]  (Doc. No.

26, filed Feb. 28, 2013.)  For the following reasons, the court recommends that Defendant

Bond's Motion to Dismiss be GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

 The following factual background is taken from Plaintiff's Amended Prisoner Complaint.

(Doc. No. 9, filed Dec. 17, 2012 [Am. Compl.].)  In this case, Plaintiff, who at all time pertinent

---

[1] Defendant "La Londe," correctly spelled and hereinafter referred to as Defendant LaLonde (*see* Mot. Quash, Doc. No. 27, filed Feb. 28, 2013, at 1), has not joined in Defendant Bond's Motion to Dismiss.  Instead, through a special appearance by counsel, he has filed a separate Motion to Quash Service.  (*See id.*)  Accordingly, the court does not address Plaintiff's claims against Defendant LaLonde and only addresses the factual allegations against him to provide context.

to this case was an inmate with the Colorado Department of Corrections (CDOC), alleges that Defendants Bond violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

On or about January 22, 2011, at approximately 8:00 a.m., while at the Cheyenne Mountain Re-Entry Center (CMRC), Plaintiff made plans with other inmates for a "history study session" in observance of Martin Luther King Day.[2]  (Am. Compl. at 3.)  Plaintiff alleges that observing Martin Luther King Day is part of his and other inmates' adherence to the religious practices of the Moorish Science Temple of America.  (*Id.*)

Plaintiff was then approached by an unidentified Sergeant at CMRC, who informed Plaintiff that, pursuant to Defendant Bond's order, Plaintiff would not be permitted to observe Martin Luther King Day and instead needed to attend unspecified "classes."  (*Id.*)  Defendant Bond further allegedly ordered that any individual who attempted to observe the holiday in the manner suggested by Plaintiff would receive a Code of Penal Discipline report for disobeying a lawful order, as well as an un-excused absence from class.  (*Id.*)  Plaintiff informed the unidentified Sergeant that he intended to file grievances over the situation.  (*Id.*)  However, because the Sergeant believed that the situation was probably a mistake and would be straightened out promptly, the Sergeant recommended that Plaintiff wait before filing any grievances.  (*Id.*)  As such, Plaintiff went to class as instructed.  (*Id.*)

---

[2] It is unclear if January 22, 2011 is the correct date, or, if it is, why Plaintiff was attempting to observe Martin Luther King Day on that date as Martin Luther King Day fell on January 17 in 2011.

Later that day, at approximately 12:30 p.m., Plaintiff proceeded to the case management office and received a grievance form from Case Manager Quirls.  (*Id.* at 4.)  As Plaintiff exited the case management office, Mr. Quirls yell down the hallway to Plaintiff "Fight for your rights. That [sic] what Martin would have done."  (*Id.*)

At approximately 4:45 pm, Plaintiff attempted to turn his completed grievance into Case Manager Harmon, who alleged refused to take it.  (*Id.*)  Instead, she alleged told Plaintiff "[y]ou need to just leave this situation alone before you get into trouble."  (*Id.*)  At approximately 5:10 p.m., Plaintiff was called to the Unit 2B security office and, from there, was escorted to the Shift Commander's office.  (*Id.*)  Once there, Plaintiff was handcuffed and told he was under investigation, although he was not informed of the basis for the investigation.  (*Id.*)  He was then escorted to the Special Housing Unit, which Plaintiff characterizes as "the hole."  (*Id.*)

The next day, January 23, 2011, Plaintiff submitted his grievance concerning Martin Luther King Day to Mr. Quirls.  (*Id.*)  When Plaintiff asked Mr. Quirls why he had been put in the Special Housing Unit, Mr. Quirls responded "Man, I think you pissed somebody off.  Maybe you should leave this grievance thing alone."  (*Id.*)  Mr. Quirls also told Plaintiff that he would check into "what was going on."  (*Id.*)  Plaintiff requested that he be brought his class work while in the Special Housing Unit, but that request was denied.  (*Id.*)

On or about February 11, 2011, Plaintiff spoke with Case Manager Harmon regarding why he was placed in the Special Housing Unit.  (*Id.*)  Ms. Harmon allegedly stated "you got under someone's skin with wanting to file a grievance concerning Martin Luther King Day.  I guess they felt that you needed sometime to rethink things.  Plus, Martin Luther King Day isn't

3

recognized in the C.D.O.C. anyway.  I advise you to leave it alone before you get into more trouble." (*Id.*.)

On or about February 24, 2011, Plaintiff spoke with Defendant LaLonde regarding his placement in the Special Housing Unit.  (*Id.*)  Defendant LaLonde informed Plaintiff that his placement in the Special Housing Unit was because "someone was upset about the grievance being obtained." (*Id.* at 4-5.)  Defendant Lalonde further stated "it's up to me whether you get placed back in general population or transferred.  I haven't made that judgment call yet, so you will sit here until I do." (*Id.* at 5.)

On or about February 28, 2011, Plaintiff spoke with Case Manager Tredway, who informed Plaintiff that she would be his new case manager.  (*Id.*) Ms. Tredway stated to Plaintiff, "I have spoken to numerous staff members concerning you being in the hole and found that it was done by Ms. Bond.  So, [w]e will have to wait to see what she says." (*Id.*)  When Plaintiff explained he had been in "the hole" for 37 days, Ms. Tredway advised Plaintiff to contact the CDOC's Private Prison Monitoring Unit (PPMU).[3]  (*Id.*)  Plaintiff followed Ms. Tredway's advice and submitted a kite to the PPMU.  (*Id.*)

On or about March 5, 2011, Mr. Knox of the PPMU came to speak with Plaintiff regarding his kite.  (*Id.*)  Plaintiff advised Mr. Knox that, at that time, he had been in "the hole" for 42 days.  (*Id.*)  Mr. Knox advised Plaintiff that, although CDOC administrative regulations

---

[3] CMRC is a private facility that contracts with the CDOC to prepare offenders for "an orderly transition to community placement." *See* http://www.doc.state.co.us/facility/cmrc -cheyenne-mountain-re-entry-center (last visited July 25, 2013.)

require that a private facility contact the PPMU when an inmate has been removed from population, Mr. Knox was not notified when Plaintiff was placed in the Special Housing Unit. (*Id.*)  Mr. Knox told Plaintiff that he would look into the situation.  (*Id.*)

On or about March 15, 2011, after spending 52 days in the Special Housing Unit at CMRC, Plaintiff was transferred to Kit Carson Correctional Facility (KCCF).  (*Id.*)  Plaintiff maintains that none of the behavioral modification programs he was enrolled in were available at KCCF, and thus Plaintiff was denied an opportunity to participate in rehabilitative programs. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff's Amended Complaint, filed on December 17, 2012, asserts four claims against Defendant Bond for (1) violations of his First Amendment right to free exercise of religion, (2) violations of his Eighth Amendment rights to be free from cruel and unusual punishment,[4] (3) violations of his Fourteenth Amendment rights to due process and equal protection, and (4) a claim that Defendant Bond acted with "deliberate indifference."  (Am. Compl. at 7-8.)

Defendant Bond filed her Motion to Dismiss on February 28, 2013.  (*See* Mot. Dismiss.) Plaintiff filed his "Motion in Opposition of Defendants' [sic] Motion to Dismiss" (Doc. No. 32), which the court construes and hereinafter refers to as a Response to Defendant Bond's Motion to Dismiss.  Defendant Bond's Reply was filed on April 2, 2013.  (Doc. No. 34 [Reply].) Accordingly, this matter is ripe for the court's review and recommendation.

---

[4] As discussed *infra* below, the court also finds that this claim includes a § 1983 claim for retaliation.

# LEGAL STANDARDS

### A.    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.    ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 678-80. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

A.      ***Claim One – Free Exercise***

Defendant Bond argues that Plaintiff fails to state a claim for a violation of his First Amendment free exercise rights. The court agrees.

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs. What constitutes a 'reasonable opportunity' is determined in reference to legitimate penological objectives." *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009). To state a claim that his right to free exercise of religion were violated, a prisoner must "adequately allege that the defendants 'substantially burden [his] sincerely-held religious beliefs.'" *Id.* (quoting *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007)). "If the prisoner satisfies this initial step, defendants 'may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley v. Maddox,* 493 F. App'x 928,932 (10th Cir. 2012) (citing *Kay,* 500 F.3d at 1218 & n. 2).

The first question, thus, is whether Plaintiff's religious beliefs are sincerely held. Defendant Bond has not argued that Plaintiff is not a sincere member of the Moorish Science

Temple, or that he sincerely believes that his faith requires him to observe Martin Luther King

Day. *See also Kay,* 500 F.3d at 1219 ("The inquiry into the sincerity of a free-exercise plaintiff's

religious beliefs is almost exclusively a credibility assessment") (citation and internal quotation

marks omitted). Thus, for purposes of this Recommendation, the court assumes that Plaintiff's

religious beliefs are sincerely held.

Defendant Bond instead argues that Plaintiff's first claim must fail because an isolated

act of negligence does not amount to a First Amendment violation. Although the court agrees

that an act of negligence is insufficient to establish a free exercise violation, *Mckinley,* 493 F.

App'x at 932 (an inmate "must assert conscious or intentional interference with his free exercise

rights to state a valid claim under § 1983"), the court disagrees that Defendant Bond's alleged

decision  denying Plaintiff an opportunity to observe Martin Luther King Day was merely

negligent. According to Plaintiff's allegations, Defendant Bond "handed down an order" stating

that Plaintiff "would not be allowed . . . to observe the holiday." (Am. Compl. at 3.) In light of

the fact that she allegedly issued an affirmative order preventing Plaintiff from observing Martin

Luther King Day, it cannot be said that Defendant Bond acted unintentionally.

Nevertheless, the court agrees that an isolated act denying an inmate the opportunity to

observe a religious holiday does not constitute a substantial burden on religious exercise. The

Tenth Circuit has "emphasized 'that [not] every infringement on a religious exercise will

constitute a substantial burden.'" *Mckinley,* 493 F. App'x at 933 (quoting *Abdulhaseeb v.

Calbone,* 600 F.3d 1301, 1315 (10th Cir. 2010)). "[A]t a minimum the substantial burden test

requires . . . more than a inconvenience to one's religious practice." *Abdulhaseeb,* 600 F.3d at

1316 (citation and internal quotation marks omitted); *Strope v. Cummings,* 381 F. App'x 878,

882 (10th Cir. 2010).  Thus, the Tenth Circuit and other courts have held that isolated or sporadic

interference with an inmate's practice of his religion is insufficient to constitute a substantial

burden on religious exercise.  *See Abdulhaseeb,* 600 F.3d at 1321 (one specific instance of

inmate being forced to accept a meal he considered impermissible did not constitute a substantial

burden on the inmate's religious exercise); *Gallagher,* 587 F.3d at 1070 (single violation of

kosher diet, as opposed to a more widespread prison policy, did not substantially burden

inmate's religious practice); *White v. Glantz,* 986 F.2d 1431, 1993 WL 53098, at *1 (10th Cir.

Feb. 25, 1993) (unpublished table opinion) (emphasizing that the question is typically whether a

prison *policy* violates an inmate's First Amendment rights, as an isolated occurrence ordinarily

will not suffice); *Vigil v. Jones,* 09-cv-01676-PAB-KLM, 2011 WL 1480679, at *6 (D. Colo.

Mar. 15, 2011) *recommendation affirmed and adopted at* 2011 WL 1526567 (D. Colo. Apr. 19,

2011) (denying inmate opportunity to participate in four services in twenty months did not

constitute a substantial burden on religious exercise); *Hadi v. Horn,* 830 F.2d 779, 787 (7th Cir.

1987) *accord Strope v. Cummings,* No. 05-3385-SAC, 2009 WL 3045463, at *4 (D. Kan. Sept.

22, 2009) (the occasional failure to accommodate a prisoner's access to religious services does

not violate the Constitution)

     As such, the court finds that the single occurrence whereby Plaintiff was allegedly denied

an opportunity to observe Martin Luther King Day falls short of constituting a substantial burden

on Plaintiff's religious exercise.  This conclusion is bolstered by the fact that Plaintiff admits that

he made plans to observe the holiday the very same day he sought to carry them out, *cf. O'Lone*

*v. Estate of Shabazz,* 482 U.S. 342, 349 (courts must afford appropriate deference to prison administrators "who are actually charged with and trained in running of the particular institution under examination."). As a consequence, the court finds that Plaintiff fails to state a claim for a violation of his First Amendment free exercise rights against Defendant Bond. Accordingly, Defendant Bond's Motion to Dismiss is properly granted with respect to Plaintiff's first claim for relief.

**B.     Claims Two and Four**

    **1.     Eighth Amendment**

At the outset, the court finds that Plaintiff's second and fourth claims for relief are largely identical. Plaintiff's second claim alleges that his placement in the Special Housing Unit for 52 days violated his Eighth Amendment right to be free from cruel and unusual punishment, whereas Plaintiff's fourth claim alleges that Defendant Bond acted with deliberate indifference by placing him in the Special Housing Unit. A claim for "deliberate indifference" is not a self-standing claim; rather, whether a defendant acted with deliberate indifference is a component of the test for determining whether a Defendant violated the Eighth Amendment. *See, e.g., DeSpain v. Uphoff,* 264 F.3d 965, 971 (10th Cir. 2001). Thus, the court treats these claims as identical and addresses them together.

Defendant Bond argues that Plaintiff's second and fourth claims fails to state a violation of Plaintiff's Eighth Amendment rights. The court agrees.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,*

94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).

Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate

food, clothing, shelter, and medical care and . . . tak[e] reasonable measures to guarantee the

inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v.

Brennan,* 511 U.S. 825, 832-33 (1994)).

 "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an

inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate

constitutional protection, and (2) prison officials acted with 'deliberate indifference to inmate

health or safety.'" *Reynolds v. Powell*, 370 F.3d 1028, 1031-1032 (10th Cir. 2004) (quoting

*Farmer*, 511 U.S. at 834). The question of the defendant's culpability is subjective, but whether

the condition complained of is sufficiently serious is evaluated on an objective basis. *Barney*,

143 F.3d at 1310.

 The objective component of a "conditions of confinement" claim requires that the

objectionable conditions be sufficiently serious so as to "deprive inmates of the minimal

civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison

conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney*,

143 F.3d at 1311 (quoting Rhodes, 452 U.S. at 347); *see also Wilson v. Seiter*, 501 U.S. 294, 298

(1991) ("The Constitution . . . does not mandate comfortable prisons and only those deprivations

denying the minimal civilized measure of life's necessities are sufficiently grave to form the

basis of an Eighth Amendment violation.") (internal citations and quotation marks omitted).

The court finds that Plaintiff's second claim fails on the objective prong of the Eighth

Amendment inquiry.  Plaintiff relies solely on the fact that he was housed in "solitary

confinement" (i.e. the Special Housing Unit) for 23 hours a day for 52 days (Am. Compl. at 7,

8), as well as the fact that this placement denied him an opportunity to participate in drug and

alcohol facility programs otherwise offered at the facility (*id.* at 7).[5]  However, the Tenth Circuit

has held that confinement that includes "lockdown 23 hours per day in extreme isolation,"

"indefinite confinement," and "limited ability to exercise outdoors" do not, individually or in

concert, violate the Eighth Amendment.  *Ajaj,* 293 F. App'x 575, 582-84 (10th Cir. 2008).  The

fact that Plaintiff may have been foreclosed from participating in treatment programs for a

relatively short period of time while in the Special Housing Unit does not tip the balance toward

a conclusion that he was denied of the minimal civilized measure of life's necessities.[6]

---

[5] Plaintiff also supports his Eighth Amendment claim with the fact that Defendant Bond allegedly failed to notify PPMU officials of his placement in the Special Housing Unit.  The court finds that this fact is not relevant to whether the conditions of his confinement in the Special Housing Unit were sufficiently serious to implicate the Eighth Amendment's protections.

[6] In his Response, Plaintiff maintains that his placement in the Special Housing Unit also denied him opportunities for outdoor recreation activities, attending meals with other inmates, and attending religious services.  (Resp. at 8.)  He also maintains that his cell was keep at a temperature of 35 degrees, which caused "physical injury and health risk to the point were [sic] he became extremely ill and needing medical care."  (*Id.*)  The court cannot consider these arguments, however, because its review under Rule 12(b)(6) is limited to the four corners of the Amended Complaint.  *Oxendine v. Kaplan,* 241 F.3d 1272 (10th Cir. 2001).  In any event, even if his cell was kept at 35 degrees or below, which the court considers to be the Response's most significant argument, this is insufficiently serious to implicate the Eighth Amendment's protections, particularly when Plaintiff's argument is conclusory as to how he was injured by the temperature in his cell.  *See, e.g., Askew v. Fairman,* 880 F. Supp. 557, 561-62 (N.D. Ill. 1995) (inmate's allegations that his cell floor temperature was 35 degrees during the winter months was not sufficiently serious to raise Eighth Amendment concerns); *Turner v. Felzien,* 11-cv-3033-PAB-MJW, 2013 WL 1093001, at *5 (D. Colo. Mar. 15, 2013) (allegation that the plaintiff was

Accordingly, Plaintiff's factual allegations contained in his second and fourth claims for relief are insufficient to state a claim for relief under the Eighth Amendment.

### 2.     *First Amendment Retaliation*

Defendant Bond also reads Plaintiff's second claim to assert a § 1983 claim for retaliation.  The court agrees with this construction.  In his second claim, Plaintiff alleges that his placement in the Special Housing Unit "was in retaliation for the plaintiff's use of the C.D.O.C.'s grievance process subjecting the plaintiff to cruel and unusual punishment."  (Am. Compl. at 8.)  Notwithstanding the fact that Plaintiff may have invoked the wrong constitutional provision to support a retaliation claim, *see Allen v. Avance,* 491 F. App'x 1, 5 (10th Cir. 2012) (a § 1983 claim for retaliation arises under the First Amendment), in light of Plaintiff's *pro se* status*,* the court liberally construes Plaintiff's second claim to assert a retaliation claim.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.  It is well established that officials may not unreasonably hamper inmates in gaining access to the courts."  *Smith v. Maschner,* 899 F.2d 940, 948 (10th Cir. 1990).  To state a claim under § 1983 for retaliation, a plaintiff must allege "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was

---

stripped and left in a 40 degree punitive holding cell for 12 days was not sufficiently serious where the plaintiff did not allege whether he was provided with blankets, bedding, or other means to stay warm or how he was damaged as a result of his stay in the holding cell).

substantially motivated as a response to the plaintiff's exercise of constitutionally protected

conduct." *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks and

citations omitted).   "An inmate claiming retaliation must allege *specific facts* showing retaliation

because of the exercise of the prisoner's constitutional right." *Peterson v Shanks,* 149 F.3d at

1140, 1144 (10th Cir. 1998) (emphasis in original; internal quotation marks and citation

omitted).

Defendant Bond does not dispute that Plaintiff sufficiently alleges the first element of a

retaliation claim "as the filing of prison grievances has been recognized to be a protected

activity." (Mot. Dismiss at 10.)  *See also Gee v. Pacheco,* 627 F.3d 1178, 1189 (10th Cir. 2010)

(It is well established that the filing of grievances is protected by the First Amendment).  Rather,

Defendant Bond argues that Plaintiff's allegations do not satisfy remaining elements of a § 1983

retaliation claim.

More specifically, as to the second prong, Defendant Bond argues that placement in

segregation would not deter an person of ordinary firmness from continuing to engage in the

protected activity because segregation is a "normal condition of confinement."  (Mot. at 11.)

The court disagrees.  Several decisions from this district have recognized that placement or

continued placement in segregation would "chill a person of ordinary firmness" from continuing

to file complaints. *See, e.g., Denson v. Maifeld,* 09-cv-02087-WYD-KLM, 2012 WL 4356216,

at *9 (D. Colo. Sept. 24, 2012); *Parker v. Ritter,* 08-cv-737-MSK-KLM, 2010 WL 1286081, at

*9 (D. Colo. Mar. 25, 2010).  Moreover, even if assigning an inmate to the Special Housing Unit

is otherwise a normal condition of confinement, Defendant Bond's overlooks Tenth Circuit case

law holding  that "[a]n act taken in retaliation for the exercise of a constitutionally protected

right is actionable under § 1983 even if the act, when taken for a different reason, would have

been proper." *DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir. 1990).

Defendant Bond also argues that the fact that Plaintiff filed a grievance after being taken

to the Special Housing Unit demonstrates that Plaintiff was not deterred from exercising his

constitutional rights.  However, the second element is not a subjective inquiry; instead the test

objective--would an inmate of "ordinary firmness" be chilled.  *Fleming v. Clark,* No. 2:09-cv-

1038 DAK, 2012 4343836, at *6 (D. Utah Sept. 21, 2012).  Altogether, the court agrees with

other decisions from this district that placement in administrative segregation, such as the

Special Housing Unit, would be sufficient to chill a person of ordinary firmness from pursuing

his constitutional rights in the future.

As to the third prong, Defendant Bond argues that Plaintiff has not adequately alleged a

causal connection between his protected activity and the adverse action taken by Defendant

Bond.  The court disagrees with this contention as well.  To establish a claim for retaliation, a

plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . .

would not have taken place.  *Maschner,* 889 F.2d at 949-50 (citation omitted).  This causal

connection may be shown through circumstantial evidence, such as temporal proximity, a

chronology of events, or suspicious timing.  *See id.* at 949.

The court finds that the close temporal proximity between Plaintiff's attempt to file a

grievance regarding Martin Luther King Day and his assignment to the Special Housing Unit is

sufficient to establish the requisite causal connection.  Less than five hours after he obtained a

grievance from Case Manager Quirls and approximately 25 minutes after he attempted to turn his grievance in, Plaintiff was allegedly called into the Shift Commander's officer, placed in handcuffs, told he was under investigation for an unspecified offense, and escorted to the Special Housing Unit.  (Am. Compl. at 4.)

Moreover, this close temporal proximity as evidence of a causal connection is corroborated by a number of alleged statements and actions of CMRC officials.  For example, when Plaintiff attempted to turn his grievance in on January 22, 2011, Case Manager Harmon refused to accept Plaintiff's grievance and allegedly stated that Plaintiff "need[ed] to just leave this situation alone before you get into trouble."  (Am. Compl. at 4.)  Similarly, a day later, when Plaintiff ultimately submitted his grievance, Case Manager Quirls allegedly stated "Man, I think you pissed somebody off.  Maybe you should leave this grievance thing alone."  (*Id.*)  Then when Plaintiff inquired as to why he was placed into the special housing unit, Case Manager Harmon stated "[y]ou got under someone's skin with wanting to file a grievance concerning Martin Luther King Day.  I guess they feel that you needed sometime to rethink things."  (*Id.*)  Finally, when Plaintiff was later told by his new Case Manager, Ms. Tredway, that Defendant Bond was responsible for Plaintiff's placement in administrative segregation.  (*Id.* at 5.)  Ultimately, if these facts are proven at trial, they likely would be sufficient to establish that Defendant Bond placed Plaintiff in the Special Housing Unit because he filed a grievance regarding the Martin Luther King Day incident.

Altogether, the court finds that Plaintiff has plausibly stated a § 1983 claim for retaliation.  Therefore, the court find that Defendant Bond's Motion to Dismiss is properly

denied with respect to Plaintiff's allegations of retaliation, as contained in his second claim for relief.

**C.      Claim Three – Fourteenth Amendment**

   **1.      Due Process**

   Plaintiff's third claim alleges, in part, that Defendant Bond violated his due process rights by placing him in the Special Housing Unit for 52 days without due process.  Defendant Bond argues that Plaintiff's third claim fails to state a claim for violations of his Fourteenth Amendment due process rights because he has failed to show that he had a liberty interest in avoiding placement in the Special Housing Unit.  The court agrees.

   This claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are generally limited to freedom from restraint that "imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life."  The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974), to determine whether the Due Process Clause afforded an inmate who received 30 days in punitive segregation following a disciplinary hearing a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*.  *Id.* at 483–84.

   Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*.  *See Wilkinson v. Austin*, 545 U.S.

209, 221-23 (2005); *see also Estate of DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct.  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  Thus, the fact that Defendant Bond allegedly did not follow the guidelines and procedures of CDOC Administrative Regulation (AR) 600-01 for removing an offender from population (Am. Compl. at 8) is insufficient to establish that Plaintiff had a constitutionally protected liberty interest.

Instead, under *Sandin* and its progeny, a liberty interest arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence.  *See Sandin*, 515 U.S. at 484, 487.  The question of whether Plaintiff received adequate process is only implicated if he establishes a protected liberty interest.

An "atypical and significant hardship" sufficient to create a liberty interest is one that is of substantial degree (i.e., whether such conditions do more than mirror those in administrative segregation and protective custody) and duration.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002).  For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate indefinitely in a supermax prison where almost all human contact was prohibited and the inmate was rendered ineligible for parole.  *Wilkinson*, 545 U.S. at 224.  In another case, the Tenth Circuit found an

19

inmate's allegations that, for a three-year period, he was confined to his cell for all but five hours each week and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to general population, arguably implicated procedural due process concerns. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

Regarding the degree of confinement, the Tenth Circuit has developed four factors that may be relevant in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest: (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement as it did in *Wilkinson*; and (4) whether the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342. Any assessment of these factors must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. *Id.* (citing *Sandin*, 515 U.S. at 482–484).

As to the first *DiMarco* factor, the court cannot conclude on the facts alleged that there was a legitimate penological interest to support Plaintiff's placement in the Special Housing Unit. According to Plaintiff's allegations, the only justification for his assignment in the Special Housing Unit was that fact that he sought to file a grievance over being denied an opportunity to observe Martin Luther King Day. That is not a legitimate penological interest. *See Fogle,* 435 F.3d at 1264 (prison officials may not harass or retaliate against inmates for filing administrative grievances).

20

With respect to the second factor, other than the fact that he was confined in his cell for 23 hours a day for 52 days, Plaintiff's Amended Complaint does not present any facts regarding the conditions of confinement in the Special Housing Unit, let alone conditions that might be considered "extreme." *See Stallings v. Werholtz,* 492 F. App'x 841, 845 (10th Cir. 2012) (assignment to administrative segregation, whereby inmate was kept in a seventy-square foot cell for at least twenty–three hours a day with only five hour outside his cell each week were not extreme).  Further, Plaintiff has not alleged that his placement in the Special Housing Unit increased the duration of his confinement.  As to the fourth factor, it appears that Plaintiff's placement in the Special Housing Unit was indeterminate as Defendant LaLonde retained discretion over whether and when to return Plaintiff to the general population.  (Am. Compl. at 5.)

At first blush, then, the *DiMarco* factors appear evenly balanced—the first and fourth factors favor Plaintiff, whereas the second and third factors favor Defendant Bond.  However, the court finds that additional considerations demonstrate that Plaintiff's assignment to the Special Housing Unit, as alleged, did not constitute an atypical and significant hardship.  First, in *Sandin* the Supreme Court determined that the inmate's confinement in punitive segregation, which (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. *Sandin*, 515 U.S. at 486. As such, the inmate's punitive confinement of 30 days did not present the type of atypical, significant deprivation in which a state might create a liberty interest. *Id.*  Further, in *Gaines*, the Tenth Circuit noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail as a matter of law to satisfy the 'atypical and significant' requirement

in a case in the future, thereby making it futile to allow the *pro se* plaintiff to amend his complaint." *Gaines*, 292 F.3d at 1296.

Here, although Plaintiff's indeterminate placement in administrative segregation may not have been supported by a legitimate penological interest, it ultimately lasted for only 52 days, which is several weeks less than the 75-day period the Tenth Circuit suggested may fail as a matter of law to demonstrate an atypical and significant hardship. Moreover, as discussed above, Plaintiff has not presented any facts to suggest that the conditions of his confinement in the Special Housing Unit exceeded similar discretionary confinement in either scope or degree.

Therefore, in light of these additional considerations, the court finds that the allegations of the Amended Complaint fail to establish that Plaintiff had a liberty interest in avoiding transfer to the Special Housing Unit. Accordingly, the court finds that Plaintiff fails to state a claim for violations of his Fourteenth Amendment due process rights.

### 2.    *Equal Protection*

Plaintiff's third claim also alleges that Defendant Bond violated the Fourteenth Amendment's Equal Protection Clause because she did not follow AR 600-01 before removing Plaintiff from general population. Plaintiff contends AR 600-01 would have been followed for other inmates under similar circumstances. Defendant Bond's Motion to Dismiss does not address the equal protection component of Plaintiff's third claim. Nevertheless, because Plaintiff is proceeding *in forma pauperis* (Doc. No.7)*,* the court is authorized to dismiss this claim *sua sponte* to the extent it fails to state a claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

The Equal Protection Clause requires the government to treat similarly situated people alike.  *Barney,* 143 F.3d at 1312 (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S.432, 439 (1985)).  In order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated different from others who were similarly situated to him.  *Id.*

Here Plaintiff sets forth only conclusory allegations that the guidelines of AR 600-01 "were not followed as they would have been concerning other offenders."  (Am. Compl. at 8.) Plaintiff has not set forth any factual allegations demonstrating that other inmates at CMRC faced with circumstances similar to Plaintiff were provided the protections of AR 600-01 prior to being placed in the Special Housing Unit.  Otherwise, "a failure to adhere to administrative regulations" standing on its own "does not equate to a constitutional violation."  *Hovater v. Robinson,* 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).  Accordingly, the court finds that Plaintiff has failed to state a claim for violations of his Fourteenth Amendment equal protection rights.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendant Bond's "Motion to Dismiss."  (Doc. No. 26) be GRANTED in part and DENIED in part.  Specifically, the court RECOMMENDS that Defendant Bond's Motion to Dismiss be DENIED with respect to Plaintiff's § 1983 claim for retaliation, as contained in his second claim for relief, and GRANTED in all other respects.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does

not put the district court on notice of the basis for the objection will not preserve the objection for

*de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must

be both timely and specific to preserve an issue for de novo review by the district court or for

appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street,*

*Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de*

*novo* review by the district judge of the magistrate judge's proposed findings and recommendations

and will result in a waiver of the right to appeal from a judgment of the district court based on the

proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573,

579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation

*de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");

*One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report

and recommendation must be both timely and specific to preserve an issue for *de novo* review by

the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*,

52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's

order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United*

*States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived

their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

    Dated this 29th day of July, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge